Louisville & Nashville R. R. Co. *vs.* T. S. Blair & others.

## October Term, 1873.

Agency—Acts of sub-agents.—A general, or supervising agent is not ordinarily responsible for the negligence or misconduct of sub-agents appointed by him with the sanction of the principal, or by the principal upon his recommendation, if he has used reasonable diligence in his choice of the sub-agents.

Same—Case in judgment.—The defendant was station master of the complainant at Nashville, having under him a collector and cashier, whose duties were to collect all moneys due the complainant, keep regular accounts, and make statements of the business at fixed times to the principal office at Louisville, and such accounts were kept and statements made, and balances were permitted to run up against the Nashville station without notice to the defendant. *Held*, that he, and the sureties on his official bond, were not liable for such balances, there being nothing to connect him with the defalcation or neglect.

*Ed. Baxter*, for complainant.

*G. J. Stublefield*, for defendants.

The Chancellor:—This bill was filed on the 27th of July, 1871, to call the defendant Blair to account as station agent of the complainant at Nashville, and to hold him, and the other defendants, as sureties on his bond, liable for the amount found to be due, the sureties only, however, to the extent of the penalty of the bond.

The bond bears date the 6th of October, 1866, is in the penalty of $5,000, and is conditioned that Blair shall "well and truly perform the duties of said appointment (station agent), and return to the treasurer of the company all money received by him for said company, and hand in reports as required by the regulations of the company, and shall further, when the appointment or agency as above described shall cease by resignation or removal, close his accounts to the satisfaction of the company, and duly turn over all company property in his charge."

This bond was required and given under a resolution of the board of directors of the company, requiring the superintendent of the road to take bond with proper security of all employes of the company "who receive or collect money on account of this company." "The amount of such bond to be determined by the superintendent *according to the largest amount of money which at any time may come into the hands of said agents.*"

The duties of the office of station agent are defined by usage and not by positive instruction.    They are defined by Albert Fink, the general superintendent of complainant, thus: "To superintend the receiving and delivery of freight, and the collection of money due the railroad company from the parties receiving the freight, merchants, transfer agents, and connecting roads, and to remit the money collected to the treasurer of the company; to keep proper accounts of the amounts due the company, and to report promptly in case he could not make collections.    These are only part of the duties which every station agent of the L. & N. R. R. Co. has to perform."

John S. Bransford, another witness of complainant and the successor of the defendant Blair as station agent, says: "The agent of a railroad is the party in charge of a station. He has the active control and management of the station, subject to such orders as he may from time to time receive from the general officers of the company." He understands it to be also the duty of such agent to have charge of all

moneys paid into the office at the station, and the collection of all freight bills due the company, on parties residing at the station.

Both of these witnesses say that such an agent could not discharge all these duties in person. Mr. Fink's language is: " I do not think that Mr. Blair could have done all the work of the station himself. He could not have kept the books himself, nor could he have made all the collections of money without assistants. I did not look to Mr. Blair doing everything himself. His duty was to see that it was properly done, and satisfy himself of this fact."

Both Fink and Bransford state that to assist the station agent, a person was employed to act as cashier, keep the accounts of the office, receive freight bills from Louisville, deliver them to the collecting agent, receive the money collected, and transmit it to Louisville. It was also his duty to make out the weekly or monthly statements of the business of the station and transmit them to Louisville.

The defendant Blair was not a bookkeeper, nor expected to keep the books, and, as a matter of fact, did not keep them. Nor did he receive and deliver out freight bills, nor receive and remit moneys collected.

The cashier who did perform these duties was paid by the complainant.

The chief business of the station was the receipt and collection of freight bills. These were made out at Louisville and sent to the Nashville agency, the station agent, in whose name the business was done, being charged with the nominal amount of these bills, and with the proceeds of these bills he was credited when collected, and transmitted to Louisville. He was also entitled to credit for bills which could not be collected by due diligence, for expenses, etc. The freight bills during the period of Blair's occupation of office after giving the bond, were from five to *twenty thousand* dollars per week. The exhibit filed with the bill shows that from July, 1866, to January, 1868, the period in question, the bills amounted to the gross sum of $863,834.01.

23

Both of the complainant's witnesses as above agree that to assist the station agent, a collector of these freight bills was also employed and paid by the complainant. They also prove that during the period in question, J. B. Parrish & Co. were employed as collectors by the complainant; Fink, himself making the contract with them. J. B. Parrish himself proves that he always received the bills from the cashier, and paid the money collected to him, and never, as a general rule, either received from, or paid to the station agent.

The complainant's said witnesses agree that the cashier and collector were employed and paid by the company, but upon the recommendation of the station agent. At any rate that no persons would be appointed to these positions who were disapproved of by him.' The weight of the testimony is that both of these sub-agents were in fact appointed by the company, without specially consulting the defendant Blair, though it does not appear that he objected to either of them.

The proof shows that regular statements, as required by the rules of the company, of the business of the Nashville agency were regularly made out and transmitted to the office at Louisville. It is not shown that these statements were not a full and accurate account of the business of the station. They furnished, as the complainant's witnesses agree, to the Louisville office the means of knowing the exact state of the business of the station at their respective dates. The balance of freights forwarded over collections was allowed gradually to increase without any notice to the station agent at Nashville, or other action on the part of the company, until January, 1868, when an agent was sent from Louisville, who examined the books at the Nashville office, and found them, it seems, to correspond with the reports to the Louisville office. The result of the investigation was the filing of a bill in this court by the complainant against J. B. Parrish and company, for the difference between the freight bills sent out from Louisville, and the collections paid over by them, being the same amount of deficiency on which this suit is based. That suit is still pending.

Mr. Bransford, who was a general agent of the complainant at Nashville, while Blair was station agent, and occupied a room adjoining the cashier's office, says: "Mr. Blair is a very industrious man, and I thought took a great deal of interest about the business. He would do anything about the depot necessary to be done, unloading freights," etc.

Not a particle of proof has been introduced showing any neglect of duty on the part of Blair, or implicating his character, or fixing him with actively participating in any defalcation, or even having any knowledge of any defalcation or irregularity in the business of the station. The complainant's right of recovery is rested exclusively upon the ground that he is responsible for the deficiency in the accounts, because it must have been occasioned by the fault of the cashier or collector, or both, and that he is liable for their faults as his agents.

The resolution of the board directing bond to be taken from all employes of the company "who receive or collect money," requires the penalty to be "according to the *largest amount* of money which at any time may come into the hands" of such agent. The penalty of the defendant, Blair's, bond is fixed, under this resolution, at $5,000, when the proof shows that the weekly receipts averaged double that amount, often no doubt quadrupling it. And it does not seem at that time that he was required to return statements regularly to Louisville oftener than once a month. The penalty, therefore, could not be intended to cover the collections of freight, and it does distinctly appear that he did not handle such collections. The bond accords with the testimony, which is that his duty in this regard was supervisory. In order to recover on the bond, therefore, it should be charged and shown that he neglected to exercise such supervision, which has not been done. It has been left to be inferred from the large deficiency that there must have been negligence. And this is true, but the negligence seems to have been at the Louisville office to which the cashier, whose duty it was, made the regular returns. If that office

had been vigilant, and called the attention of their station agent to the increasing deficiency, and he had failed to take the proper steps to prevent it, he would have been clearly guilty of neglect of duty. But it does appear that the defendant, Blair, was not expected to keep the books and was not a book-keeper, and it also appears that the books were kept, the freight bills received and handed out, the freights received from the collector and remitted by the cashier. These, therefore, were specially his duties. He was employed by the company and reported to it, although in the name of the agent. It is not shown that the station agent was expected to examine these accounts, unless his attention was called to them by the mother office. I am of opinion, consequently, that the complainants have failed to make out a case against defendants on the bond.

But I am also clearly of opinion that the defendant, Blair, was not bound for the faults of either the cashier or collector, unless he was cognizant of them, or connected with them, of which there is no pretence in this case. These agents were employed and paid by the complainant, and were, as the testimony shows, absolutely necessary to the discharge of the duties of the agency. In such a case, it is a matter of no consequence whether the sub-agent was appointed on the recommendation of the chief agent, or appointed directly by him with the sanction of the principal. In all cases of this sort, where the sub-agency is required by the exigency of the business or is authorized by the principal, the agent will not be responsible for the negligence or misconduct of the sub-agent, if he has used reasonable diligence in his choice as to the skill and ability of the sub-agent. Story on Agency, §§ 201, 217 a, 321. It is neither charged nor shown that the persons employed as cashier and collector in this case were not good men, and of unexceptionable character when employed; or, in other words, that the defendant, Blair, knew that they were, for any reason, unfit for the discharge of the duties to which they were assigned.

I am of opinion, therefore, that the complainant has wholly failed to make out any case against the defendants; and order that the bill be dismissed with costs.

NOTE.—This decision was, upon appeal, affirmed.